PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAVID E. CLARK,                         )
                                        )     CASE NO.  4:16CV2430
                Plaintiff,              )
                                        )
          v.                            )     JUDGE BENITA Y. PEARSON
                                        )
GOVERNOR JOHN KASICH, *et al.*,         )     **MEMORANDUM OF OPINION**
                                        )     **AND ORDER**
                Defendants.             )     [Resolving ECF No. 6]


    *Pro Se* Plaintiff David E. Clark filed this action under 42 U.S.C. § 1983 against Ohio

Gov. John Kasich, Ohio Department of Rehabilitation and Correction ("ODRC") Director Gary

Mohr, Ohio Attorney General Mike DeWine, John Doe Toledo Correctional Institution ("ToCI")

Administrators, Grafton Correctional Institution ("GCI") Case Manager Vandersommen, GCI

Warden Bennie Kelly, GCI Unit Manager Weishar, GCI Warden's Assistant Armbruster, and

GCI Capt. Coleman.  In the Complaint (ECF No. 1), Plaintiff alleges his security classification

was improperly raised after his arrival at GCI in September 2014.  ECF No. 1 at PageID #: 3, ¶

17.  He contends this action was orchestrated by ToCI administrators to harass and retaliate

against him.  ECF No. 1 at PageID #: 5, ¶¶ 41-43.  Plaintiff asks the Court to declare "[t]he Ohio

state statutes and practices indemnifying state employees and officials from 28 U.S.C. § 1983

(sic) damage awards violates the Supremacy Clause of the United States Constitution, as it

eliminates or significantly diminished the federal statutes (sic) intended deterrent effect."  ECF

No. 1 at PageID #: 5.

(4:16CV2430)

On January 12, 2017, the Court received and filed a Supplemental Complaint (ECF No. 5) naming new party defendants based on entirely unrelated events.  Plaintiff seeks to add as defendants Trumbull Correctional Institution ("TCI") Corrections Officers Ostling and Mandato, Inmate Roby, and Unit Manager Lowery, claiming they conspired to have him moved from the "wellness unit" of TCI on a contraband charge.  ECF No. 5 at PageID #: 12, ¶ 4.  In addition, Plaintiff includes claims in the Supplemental Complaint (ECF No. 5) against TCI Deputy Warden of Special Services Davis, Maj. Harris, Lt. Devieste, Investigator Booth, TCI Warden Charmaine Bracy, Sgt. Green, Dr. Coe, Corrections Officers Emeric and Lukas, Lt. Squibbs, and Deputy Warden Bower.  He complains about events that occurred in 2016 in which he ordered an airbrush but was not permitted to keep it.  ECF No. 5 at PageID #: 13-14, ¶¶ 6, 10-13.  Plaintiff also alleges he was brought up on false conduct charges to retaliate against him for past lawsuits and grievances.  ECF No. 5 at PageID #: 14-16, ¶ 14-17, 20.  He seeks monetary damages.

## I.  Background

Plaintiff indicates his security level was reduced from Level 3A to 2A in June 2014.  ECF No. 1 at PageID #: 2, ¶ 15.  He was transferred to GCI on September 23, 2014.  ECF No. 1 at PageID #: 3, ¶ 16.  Plaintiff was in general population for six days when officers came to his cell and informed him that they were taking him to segregation because he was a Level 3 inmate.  ECF No. 1 at PageID #: 3, ¶ 17.  He attempted to prove that his security classification had been lowered, but the officers would not listen to him.  ECF No. 1 at PageID #: 3, ¶ 18-19.  Plaintiff states he was not permitted to pack up his own belongings, which resulted in the officers throwing his personal items into a locker-box.  ECF No. 1 at PageID #: 3, ¶ 20-21.  He received a

2

(4:16CV2430)

conduct ticket for having contraband, which he contends consisted of his legal work and art materials for which he had not yet attained the authorizing paperwork.  ECF No. 1 at PageID #: 3, ¶ 21.  Plaintiff states that while he was in segregation, Warden Kelly, Unit Manager Weishar and the Inspector of Institutional Services confirmed the attention he was receiving was a result of calls from ToCI staff.  ECF No. 1 at PageID #: 3, ¶ 22.

Plaintiff alleges that on September 30, 2014, Case Manager Vandersommen conducted a "security review."  ECF No. 1 at PageID #: 3, ¶ 23.  The decision apparently was not favorable to Plaintiff because he indicates he filled out an appeal form and sent it to Armbruster, the Warden's designee.  ECF No. 1 at PageID #: 4, ¶ 31.  Armbruster told Mr. Fulton, Plaintiff's Case Manager at TCI, he would give him a copy of the appeal, but did not provide one to him.  ECF No. 1 at PageID #: 4, ¶¶ 36, 38.  Capt. Coleman came to Plaintiff's cell to transfer him to another prison.  Plaintiff claims he told the captain that he had property in the office vault.  ECF No. 1 at PageID #: 4-5, ¶ 39.  He does not state if he received his property.  Plaintiff also does not specify the prison to which he was transferred.  Although, it appears he was transferred to TCI.

In the Supplemental Complaint (ECF No. 5), Plaintiff alleges TCI Corrections Officers Ostling and Mandato, Inmate Roby, and Unit Manager Lowery conspired to have him moved out of the "wellness unit" for playing music from a DVD which was classified as contraband.  ECF No. 5 at PageID #: 12, ¶ 4.  He suggests, without explanation, that the action was taken in retaliation for exercising his right of access to the courts and filing grievances against ToCI and TCI staff.  Plaintiff contends this conspiracy began upon his arrived at TCI in October 2013 and was prompted by personnel at ToCI.  ECF No. 5 at PageID #: 12-13, ¶ 5.

3

(4:16CV2430)

In addition, Plaintiff alleges that prior to September 2016, he received permission from Unit Manager Holland to order an airbrush for a community service art program.  He contends Lt. Devieste had assured Holland that the lieutenant was going to get the airbrush to Plaintiff. ECF No. 5 at PageID #: 13, ¶ 6.  Plaintiff states Maj. Harris called him to the administrative offices on December 20, 2016 to speak to him about a photo he had emailed over the ODRC's JPay email system.  ECF No. 5 at PageID #: 13, ¶¶ 7-8.  He inquired about his airbrush and Maj. Harris indicated he was aware of the airbrush and the staff had a plan for it.  ECF No. 5 at PageID #: 13, ¶ 10.  Soon after that conversation, Plaintiff encountered Holland who informed him that the prison staff would only allow him to have the airbrush if he signed over ownership of it to the institution.  ECF No. 5 at PageID #: 13-14, ¶ 11.  Plaintiff states he sent a complaint to Maj. Harris objecting to the decision and indicating he wanted his property.  ECF No. 5 at PageID #: 14, ¶ 12.  Warden Bracy and Maj. Harris were making rounds in Plaintiff's housing unit on December 27, 2016 when Plaintiff confronted the major about the airbrush.  He claims Maj. Harris treated him rudely and disrespectfully.  ECF No. 5 at PageID #: 14, ¶ 13.  Plaintiff does not state whether he was permitted to keep the airbrush.

Plaintiff alleges that on December 30, 2016, Sgt. Green presented him with a conduct ticket issued by Deputy Warden Davis on December 23, 2016 pertaining to a telephone call in which Plaintiff was deemed to have been conducting business operations without express written permission from the warden.  ECF No. 5 at PageID #: 14, ¶¶ 14-15.  Rules Infraction Board Members Squibbs and Lukas found him guilty of the charges despite Plaintiff's protestations of innocence.  Plaintiff claims he was moved from the merit block of the prison to the block in the

4

(4:16CV2430)

prison with the most gang-related activity.  ECF No. 5 at PageID #: 14-15, ¶ 16.  He informed

Officer Emeric that he needed to go on suicide watch.  Plaintiff claims Emeric and Sgt. Green

conspired to have him moved to segregation instead of suicide watch, by indicating Plaintiff was

refusing the move.  ECF No. 5 at PageID #: 15, ¶ 18.  Nevertheless, Plaintiff was placed on

suicide watch for four days.  He complains that while on suicide watch he was nearly naked in a

cold cell.  Plaintiff also indicates he was on a hunger strike.  ECF No. 5 at PageID #: 15, ¶ 19.

He asserts these actions were taken against him because of the general conspiracy to retaliate

against him for lawsuits he filed in the past and complaints he recently filed concerning the

airbrush.  ECF No. 5 at PageID #: 15-16, ¶ 20.

## II.  Standard for Dismissal

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364,

365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is

required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a

claim upon which relief can be granted or if it lacks an arguable basis in law or fact.  *Neitzke v.

Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v.

City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  An action has no arguable basis in law

when a defendant is immune from suit or when a plaintiff claims a violation of a legal interest

which clearly does not exist.  *Neitzke*, 490 U.S. at 327.  An action has no arguable factual basis

when the allegations are delusional or rise to the level of the irrational or "wholly incredible."

*Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  *See also Lawler*, 898 F.2d at 1199.

5

(4:16CV2430)

When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Id.* (citation omitted). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), further explains the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

(4:16CV2430)

### III.  Law and Analysis

#### A.

As an initial matter, Plaintiff names Gov. Kasich, Director Mohr, Investigator Booth, Dr. Coe, and Deputy Warden Bower as Defendants, but does not include any allegations against them in the Complaint (ECF No. 1) and Supplemental Complaint (ECF No. 5).  Plaintiff cannot establish the individual liability of any Defendant absent a clear showing that the Defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995).  Plaintiff simply does not allege facts to reasonably associate these Defendants to any of the claims set forth in the Complaint (ECF No. 1) and Supplemental Complaint (ECF No. 5).  Plaintiff's claims against them in their individual capacities are dismissed.

To the extent these Defendants are sued in their official capacities, they are immune from damages.  A suit against a public servant in his official capacity imposes liability on the office he represents.  *Brandon v. Holt*, 469 U.S. 464, 471 (1985).  The entity represented by these Defendants is the State of Ohio.  The Eleventh Amendment is an absolute bar to the imposition of liability upon States and State agencies.  *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005).

#### B.

Similarly, Plaintiff does not specify a legal cause of action against Case Manager Vandersommen, Warden Kelly, Unit Manager Weishar, Warden's Assistant Armbruster, Capt.

(4:16CV2430)

Coleman, Lt. Devieste and Warden Bracy and the facts he alleges in the Complaint (ECF No. 1)

and Supplemental Complaint (ECF No. 5) do not readily suggest one he may be attempting to

assert.  To satisfy basic notice pleading requirements, the Complaint (ECF No. 1) and

Supplemental Complaint (ECF No. 5) must give Defendants fair notice of what the Plaintiff's

claims are and the grounds upon which they rest.  *Bassett v. National Collegiate Athletic Ass'n,*

*528 F.3d 426, 437 (6th Cir. 2008).*   Plaintiff states Vandersommen conducted a "security

review."  ECF No. 1 at PageID #: 3, ¶ 23.  He alleges Kelly and Weishar confirmed the security

issue was being raised by staff at ToCI.  ECF No. 1 at PageID #: 3, ¶ 22.  Plaintiff states

Armbruster, as the Warden's Assistant, accepted his appeal but did not provide him with a

photocopy of it.  ECF No. 1 at PageID #: 4, ¶¶ 36, 38.  He indicates Coleman came to get him for

his transfer.  ECF No. 1 at PageID #: 4-5, ¶ 39.  Plaintiff states Holland told him Lt. Devieste

approved the purchase of the airbrush and Bracy was with Maj. Harris when Harris was rude to

him.  ECF No. 5 at PageID #: 13, ¶ 6; 14, ¶ 13.  Plaintiff does not specify a legal claim or claims

against these Defendants and none is apparent on the face of the Complaint (ECF No. 1) and

Supplemental Complaint (ECF No. 5).  He fails to satisfy the basic pleading requirements of Fed.

R. Civ. P. 8 with respect to these Defendants.

## C.

In addition, Plaintiff includes at least three conspiracy claims which are stated solely as

legal conclusions without supporting facts.  Conspiracy claims must be pled with some degree of

specificity and vague and conclusory allegations unsupported by material facts will not be

sufficient to state such a claim under § 1983.  *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.

8

(4:16CV2430)

1987).  A civil conspiracy under § 1983 is "an agreement between two or more persons to injure

another by unlawful action."  *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007).  To prevail

on a civil conspiracy claim, a plaintiff must allege that a single plan existed, the defendants

shared in the general conspiratorial objective to deprive plaintiff of his constitutional rights, and

"an overt act was committed in furtherance of the conspiracy that caused injury" to the plaintiff.

*Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (citing *Hooks v. Hooks*, 771 F.2d

935, 944 (6th Cir. 1985)).  Plaintiff alleges in very general terms that ToCI Administrators are

contacting other prisons and conspiring against him in retaliation for complaints and grievances

he has filed.  ECF No. 1 at PageID #: 5, ¶¶ 41-43.  He also alleges, without further explanation,

that Corrections Officers Ostling and Mandato, Inmate Roby, and Unit Manager Lowery

conspired to have him moved out of the "wellness unit."  ECF No. 5 at PageID #: 12, ¶ 4.

Finally, he alleges Sgt. Green and Officer Emeric conspired to keep him off of suicide watch.

ECF No. 5 at PageID #: 15, ¶ 18.  Plaintiff, however, spent four days on suicide watch.  ECF No.

5 at PageID #: 15, ¶ 19.  None of these alleged conspiracies is pled with any specificity.  All are

stated as legal conclusions.  With respect to the last two alleged conspiracies, Plaintiff fails to

suggest which constitutional right Defendants were conspiring to violate.  Plaintiff fails to state a

claim for relief against ToCI Administrators, Ostling, Mandato, Roby, Lowery, Emeric and

Green.

Plaintiff also includes vague allegations of retaliation in connection with complaints and

grievances he filed in the past.  ECF No. 1 at PageID #: 5, ¶¶ 41-43.  These allegations are stated

in terms of being a long term battle with ToCI Administrative personnel.  Retaliation, though it is

9

(4:16CV2430)

not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill an individual's exercise of First Amendment rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). The elements of a claim for retaliation prohibited by the First Amendment are that: 1) plaintiff engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) a causal connection exists between the first two elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Although filing complaints and grievances against prison officials is conduct protected by the First Amendment, *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010), Plaintiff provides no factual allegations suggesting how his negative interactions with prison officials in GCI and TCI connected to unidentified staff members at ToCI. Plaintiff does not even specify when, if ever, he was housed at ToCI, what occurred at ToCI to motivate retaliation, or how the Defendants are connected to those actions. The claim is stated solely as a legal conclusion, which is not sufficient to state a claim.

**D.**

This leaves two potential causes of action Plaintiff may be asserting. The first is a claim against Maj. Harris for deprivation of property with respect to the airbrush. The second is a claim pertaining to the finding of guilt on the conduct charges, which Plaintiff disputes as false. The second claim is asserted against TCI Deputy Warden of Special Services Davis, who wrote the ticket, and Corrections Officer Lukas and Lt. Squibbs, who found him guilty of the charges. For the reasons that follow, neither of these causes of action states a claim upon which relief may be granted.

10

(4:16CV2430)

**1.**

Plaintiff first claims he was permitted to order an airbrush for a community art project, but Maj. Harris and other prison officials would not let him have it unless he signed it over to the institution.  ECF No. 5 at PageID #: 13-14, ¶ 11.  This could be liberally construed as a claim for deprivation of a property interest without due process.  To prevail on a procedural due process claim, a plaintiff must plead and prove either that the defendant deprived him of his property as a result of an established state procedure that itself violates due process rights; or that the defendant deprived him of his property pursuant to a random and unauthorized act and available state remedies would not be adequate to redress the deprivation.  *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir 1991); *see Vicory v. Walton*, 721 F.2d 1062, 1064 (6th Cir. 1983).  Plaintiff does not challenge an established state procedure, statute or local ordinance.  Instead, Plaintiff claims he was deprived of the airbrush due to unauthorized acts of Maj. Harris and other unnamed prison officials.

To state a procedural due process claim based upon alleged unauthorized acts of the defendants, a plaintiff must also plead and prove that state remedies for redressing the wrong are inadequate.  *Macene*, 951 F.2d at 706; *Vicory*, 721 F.2d at 1064.  A remedy is available in the Ohio Court of Claims to assert claims for deprivations of property by prison officials.  *See Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989).  Plaintiff  has not indicated that he pursued this remedy nor does he give any indication that the state remedy available to him would be inadequate.  His claim for deprivation of property against Maj. Harris is dismissed.

11

(4:16CV2430)

**2.**

Finally, although he disputes his guilt on the conduct charges, Plaintiff fails to state a claim upon which relief may be granted.  False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are adjudicated in a fair hearing.  *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986); *see also Jackson v. Madery*, 158 Fed.Appx. 656, 662 (6th Cir. 2005); *Jackson v. Hamlin*, 61 Fed.Appx. 131, 132 (6th Cir. 2003); *Munson v. Burson*, No. 98-2075, 2000 WL 377038, at *3-4 (6th Cir. April 7, 2000). Plaintiff received a disciplinary hearing; however, he provides no information about it.  Plaintiff fails to allege he was not provided with due process in connection with the disciplinary hearing.

Moreover, a prisoner found guilty in a prison disciplinary hearing cannot use § 1983 to collaterally attack the hearing or the conduct underlying the disciplinary conviction.  *See Huey v. Stine*, 230 F.3d 226, 230-31 (6th Cir. 2000), *overruled in part on other grounds by Muhammad v. Close*, 540 U.S. 749, 754-55 (2004); *see also*, *Lewis v. Pendell*, 90 Fed.Appx. 882, 883 (6th Cir. 2004) (finding that prisoner was precluded from collaterally attacking prison misconduct hearing or conduct underlying disciplinary conviction by alleging retaliation under § 1983, where favorable ruling on his retaliation claim would imply invalidity of disciplinary conviction). Because a favorable ruling on Plaintiff's claim would imply the invalidity of his disciplinary conviction, this claim is not cognizable.  *Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Huey*, 230 F.3d at 230.

12

(4:16CV2430)

### IV. Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e).  Plaintiff's "Motion

for Preliminary Injunction & TRO and Expedited Screening of Original and Supplemental

Complaints" (ECF No. 6) is denied as moot.  The Court certifies, pursuant to 28 U.S.C. §

1915(a)(3), that an appeal from this decision could not be taken in good faith.


IT IS SO ORDERED.


 February 28, 2017                           /s/ Benita Y. Pearson
Date                                     Benita Y. Pearson
                                         United States District Judge

13